**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

ROBIN R. PONTZIUS,

        Plaintiff,

        v.                           CAUSE NO.: 1:25-CV-54-TLS

FRANK BISIGNANO, Commissioner of the
Social Security Administration,

        Defendant.

## OPINION AND ORDER

The Plaintiff Robin R. Pontzius seeks review of the final decision of the Commissioner of

the Social Security Administration denying her application for supplemental security income.

The Plaintiff argues that the Administrative Law Judge (ALJ) erred related to the vocational

expert testimony, the Plaintiff's residual functional capacity, the consultative examiner's

opinion, and the Plaintiff's subjective complaints. For the reasons below, the Court finds

substantial evidence supports the ALJ's decision and there is no basis for remand.

## PROCEDURAL BACKGROUND

On November 18, 2022, the Plaintiff filed an application for supplemental security

income, alleging disability beginning February 1, 2022. AR 125, ECF No. 9. After the claim was

denied initially and on reconsideration, the Plaintiff requested a hearing, which was held before

the ALJ on February 8, 2024. AR 145–182. On March 11, 2024, the ALJ issued a written

decision, finding the Plaintiff not disabled, AR 125–139, and the Appeals Council subsequently

denied review, AR 1–7. Thus, the ALJ's decision is the final decision of the Commissioner.

*Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). On February 7, 2025, the Plaintiff filed

her Complaint [ECF No. 1] in this Court, seeking judicial review under 42 U.S.C. § 405(g). The

Plaintiff filed an opening brief, the Commissioner filed a response brief, and the Plaintiff filed a reply brief. ECF Nos. 23, 25, 26.

## THE ALJ'S DECISION

For purposes of supplemental security income, a claimant is "disabled . . . if [she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see* 20 C.F.R. § 416.905(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a). An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 416.920. The claimant has the burden at steps one through four; the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see* 20 C.F.R. § 416.912.

The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 416.920(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since November 18, 2022, the application date. AR 127.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 416.920(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments of breast cancer, osteoarthritis of the knees, chronic obstructive pulmonary disease, depression, and anxiety. AR 127.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." 20 C.F.R.

2

§ 416.920(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 416.920(a)(4)(iii), (d). Here, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that she considered Listings 1.18, 3.02, 13.10, 12.04, and 12.06. AR 128–30.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see* 20 C.F.R. § 416.920(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs. She can frequently balance as that term is defined the Selective Characteristics of Occupations ([SCO]) of the Dictionary of Occupational Titles (DOT). She can occasionally stoop, kneel, crouch, and crawl. She can occasionally reach overhead with the left upper extremity and frequently reach in all other directions with the left upper extremity. She must avoid concentrated exposure to hazards, such as unprotected heights and unguarded moving mechanical parts. She must avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants, as defined in the SCO of the DOT. She can understand, remember, and carry out simple tasks and instructions.

AR 130–31.

The ALJ then moves to step four and determines whether the claimant can do her past relevant work in light of the RFC. 20 C.F.R. § 416.920(a)(4)(iv), (f). The ALJ noted that the Plaintiff has no past relevant work under 20 C.F.R. § 416.965. AR 137.

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" given the RFC and the claimant's

age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v), (g). Here, the ALJ found that the Plaintiff is not disabled because the Plaintiff can perform significant jobs in the national economy of marker/retail, cleaner, and sales attendant. AR 137–39.

### STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (citations omitted); *see Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or

testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (cleaned up). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

### ANALYSIS

In her application for benefits, the Plaintiff alleged disability based on complaints of pain and chronic fatigue resulting in part from treatment for breast cancer. AR 545. In this appeal, the Plaintiff argues that the ALJ erred by relying on a vocational expert who did not explain his methodology, by not considering all possible limiting effects of her impairments in formulating the RFC, and by not properly considering the consultative examiner's opinion or the Plaintiff's subjective complaints. The Court addresses each argument in turn.

**A.     The Vocational Expert's Methodology**

Relying on the vocational expert's (VE) testimony at step five of the sequential analysis, the ALJ found the Plaintiff could perform work that exists in significant numbers in the national economy with the assessed RFC for a limited range of light work. The VE identified 584,400 light positions (cleaner, sales attendant, and retail marker) and 30,800 sedentary positions (charge account clerk, document copier/preparer, and information clerk). AR 138.[1]

---

[1] The ALJ cited the DOT job numbers provided by the VE: marker/retail (DOT 209.587-034); cleaner (DOT 323.687-014); sales attendant (DOT 299.677-010); charge account clerk (DOT 205-367.014); document copier/preparer (DOT 249.587-018); information clerk (DOT 237.367-018).

At the hearing, the Plaintiff's counsel questioned the VE: "And the methodology or the numbers that you testified to, are you getting those numbers from statistical studies of those DOT categories?" AR 180. The VE responded, "I use the Job Pro from SkillTRAN, and then I – the process that I use is I put in full-time positions by DOT number and then the industries were those jobs are most likely to occur, and that's what I get the numbers from." *Id.* Counsel asked no further questions of the VE. *Id.* However, counsel raised three objections at the hearing, each of which the ALJ addressed in her written decision.

First, counsel objected that the sedentary document copier/preparer job would have a higher volume with modern scanners and would require a greater lifting capacity such that the jobs would likely be light work. *Id.* The ALJ overruled the objection because counsel accepted the VE's credentials without objection; the VE was qualified; the VE accurately described the position, including any changes with the modern approach, and described the exertional level of the position, which was consistent with the DOT; and counsel provided no information to substantiate that the position would be performed at a higher exertional level. AR 138. In her brief, the Plaintiff's primary response is related to the VE's methodology, discussed below. The Plaintiff offers no response to show that the job would be performed at a higher exertional level.

Second, counsel objected to "the methodology and especially to how much these jobs are going to change with technology, artificial intelligence, and online ordering, and outsourcing, obviously." AR 180. Counsel stated, without explanation, that the objection went to the "Lauer" case, *id.*, which the Court understands to be *Alaura v. Colvin*, 797 F.3d 503 (7th Cir. 2015). The ALJ overruled the objection because the VE was qualified as an expert and provided his methodology at the hearing, which included the use of modern tools and a modern approach

when determining the number of jobs in the national economy. AR 138. The ALJ also found the objection speculative as to possible changes in technology. *Id.*

In her brief, citing *Chavez v. Berryhill*, 895 F.3d 962 (7th Cir. 2018) (rejecting the "equal distribution method"), the Plaintiff's primary argument is that the ALJ erred by relying on the VE's methodology, which was his reliance on SkillTRAN Job Browser Pro. As argued by the Defendant, the Plaintiff fails to acknowledge, must less attempts to distinguish, the Seventh Circuit Court of Appeals' more recent decision in *Chavez v. O'Malley*, 96 F.4th 1016 (7th Cir. 2024) (*Chavez II*).

In *Chavez II*, the vocational expert testified that she used Job Browser Pro to estimate the number of jobs in the national economy; Job Browser Pro "uses data from the Bureau of Labor Statistics to provide job numbers by DOT title." 96 F.4th at 1019. The plaintiff's attorney had asked the VE if she knew what formula Job Browser Pro used to come up with its numbers; the VE responded that she would need to read it from the SkillTRAN materials. *Id.* The attorney did not ask the VE to read the manual and asked no further questions. *Id.* At the hearing, the attorney objected that the VE's testimony was not reliable, in part, because she could not describe the weighing formula used in Job Browser Pro. *Id.* at 1019–20. On further questioning by the ALJ, the VE testified that "every person that I know that does this work, uses, relies upon Job Browser Pro." *Id.* at 1020. The court rejected the plaintiff's challenges to the testimony, finding it supported by the VE's "reliance on a source that is 'well-accepted' in her field." *Id.* at 1023 (citing *Biestek*, 587 U.S. at 105; *Bruno v. Saul*, 817 F. App'x 238, 241, 243 (7th Cir. 2020)). The court also found that the jobs of cleaner, office helper, and storge clerk were prevalent enough in the national economy that the claimant could not "credibly argue" that they did not exist in significant numbers." *Id.*

7

Similarly, the ALJ in this case did not err by relying on a VE with more than forty years' experience as a board-certified vocational expert whose methodology to derive job data was based on SkillTRAN Job Browser Pro, which the Seventh Circuit has recognized as a "well-accepted" source. AR 181; *see Chavez II*, 96 F.4th at 1023 (finding the VE testimony reliable for the additional reasons that she had served as a VE in social security proceedings for three years and had two decades of professional experience as a vocational consultant).The VE testified to over 500,000 jobs at the restricted range of light work assessed in the Plaintiff's RFC that are "commonly found in the national economy," namely cleaner, sales attendant, and retail marker, and provided the DOT code for each. The ALJ reasonably relied on the VE testimony. *See Case v. Kijakazi*, No. 22-2379, 2023 WL 4882880, at *3–4 (7th Cir. Aug. 1, 2023) (finding the ALJ reasonably relied on VE testimony based on SkillTRAN for the job numbers, regardless of whether the VE was able to explain the underlying methodology); *Bruno*, 817 F. App'x at 243 (finding the job numbers derived from the "SkillTRAN approach" to be reliable). While the VE in *Chavez II* offered to provide some "additional information about the source's underlying formula" when asked by the claimant's representative and the ALJ, here, the Plaintiff's attorney did not request any further information or raise an objection at the hearing that would have prompted further testimony. *See Chavez II*, 96 F.4th at 1024.

In addition, *Alaura v. Colvin*, on which the Plaintiff relied at the hearing and in her opening brief, is distinguishable. As noted by the Defendant, the vocational expert in *Alaura* did not provide any source for his job numbers. 797 F.3d at 507–08. The Plaintiff provides no further analysis to show that the decision in *Alaura* dictates a different result here. The Plaintiff asserts only that SkillTRAN *implicitly* relies on "equal distribution" and notes that the Court in *Alaura* criticized the "equal distribution method." *Brace v. Saul*, 970 F.3d 818, 821 (7th Cir. 2020)

(quoting *Alaura*, 797 F.3d at 507–08). However, SkillTRAN Job Browser Pro was not used by the VE in either *Brace* or *Alaura*, and, as discussed, the Seventh Circuit has found use of that program an acceptable methodology.[2]

Third, counsel objected generally at the hearing to the significance of the job numbers. AR 180. Overruling the objection, the ALJ noted that the regulations require only that the job exist in the national economy, meaning a significant number of jobs either within the region or in several other regions. AR 138. The ALJ noted that the VE's job numbers are an estimate based on reliable information from various sources, some of which the ALJ took judicial notice, and that the VE is qualified to provide such estimates. AR 139 (citing 20 C.F.R. § 416.966(d)). Finally, the ALJ found "that even if the numbers provided by the impartial VE were over inclusive, far fewer numbers of available jobs would suffice." *Id.* To the extent the Plaintiff argues that the 30,400 sedentary jobs is not a significant number, the ALJ found the Plaintiff could perform a range of light work, and the VE identified over 500,000 appropriate light jobs.

**B.      The RFC**

Next, the Plaintiff argues that the ALJ failed to incorporate the limiting effects of fatigue, heat sensitivity, and upper extremity difficulties related to her cancer surgery, chemo, radiation, and medication that suppresses estrogen as well as the combined impact of her impairments. The Court finds the ALJ did not ignore evidence and adequately explained her RFC determination.

The RFC is a measure of what an individual can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. § 416.945(a)(1). The "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities

---

[2] The Court does not consider cases referenced in the Plaintiff's reply brief where she did not include a citation to a published reporter or an unpublished service such as Westlaw or Lexis and did not include a copy of the decision. *See* Pl. Reply 2, ECF No. 26.

in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The relevant evidence of the individual's ability to do work-related activities includes the claimant's medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. The determination of a claimant's RFC is a legal decision rather than a medical one. *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)). The ALJ must provide a narrative discussion of the record evidence and an explanation on how the evidence supports the ALJ's RFC findings. SSR 96-8p, 1996 WL 374184, at *7. "[B]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).

First, the Plaintiff argues that the RFC fails to account for her chronic fatigue, contending that she was diagnosed with "chronic fatigue syndrome." However, on July 12, 2023, she was diagnosed with "Chronic fatigue [R53.82]," and testing was ordered to determine the cause. AR 1061, 1069. As noted by the Defendant, the diagnostic code R53.82 for "chronic fatigue, unspecified" specifically excludes chronic fatigue syndrome, which is diagnostic code R93.32.[3] The Plaintiff offers no other record evidence of a diagnosis of chronic fatigue syndrome. Also noted by the Defendant, at that appointment, the Plaintiff reported that her extreme sleepiness had only started three weeks earlier when she was hit on the head. AR 1063.

---

[3] Codify by AAPC, https://www.aapc.com/codes/icd-10-codes/R53.82?srsltid=AfmBOoo Ph2Tw2tv944cUbYoluJc_LVaQkmE-CkFO0NcYvGPuM2L7QvJ6 (last visited Mar. 26, 2026).

In her brief, the Plaintiff explains that her fatigue is a result of the lingering effects of her cancer treatment as well as her ongoing hormone therapy, citing her oncologists' notes. *See* AR 881–82. Contrary to the Plaintiff's assertion, the ALJ did not "ignore[] this whole line of evidence" regarding fatigue. Pl. Br. 16, ECF No. 23. The ALJ noted the Plaintiff's hearing testimony that she was fatigued and unable to work a full day. AR 131. The ALJ also acknowledged the July 2023 treatment record that the Plaintiff "presented for fatigue and reported she was sleeping non-stop" but that "her examination remained unremarkable with [the Plaintiff] appearing alert." AR 132. The ALJ also discussed the visit with her cancer provider in July 2023 at which the Plaintiff reported feeling very fatigued with right arm breast pain but again noted that the examination was unremarkable with the Plaintiff appearing alert and oriented. AR 133. The ALJ then noted that the Plaintiff's "provider indicated that her fatigue was likely multifactorial and otherwise, her condition was considered stable without any obvious etiology for her right breast and arm pain." AR 133 (citing AR 878–82, 958). In considering the state agency reviewing consultants' opinions for a limited range of light work, which the ALJ found persuasive, the ALJ nevertheless noted the Plaintiff's complaints of difficulty reaching with the left upper extremity and increased fatigue and added further manipulation and environmental limitations. AR 135.

The Plaintiff has not shown that the ALJ overlooked evidence of record related to her fatigue. *See Thorlton v. King*, 127 F.4th 1078, 1080–81 (7th Cir. 2025) ("[A]s we have underscored time and again, a claimant bears the burden of proving their disability. Establishing the existence of an impairment is not enough. The claimant must present evidence of limitations affecting their capacity to work." (cleaned up)). The Court finds that the ALJ's consideration of the record evidence is sufficient to show that she considered the impact of the Plaintiff's fatigue

11

on her ability to work. *See Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) ("Time and time again, we have emphasized that social-security adjudicators are subject to only the most minimal of articulation requirements. The ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." (citations omitted)).

Second, the Plaintiff asserts the RFC fails to include limitations related to upper extremity mobility. In support, however, the Plaintiff cites only evidence in a footnote of her brief related to her mastectomy and subsequent recovery but does not cite evidence of any long-term inability to move her arms and shoulders. *See* Pl. Br. 18–19. As noted by the ALJ, after surgery, the Plaintiff was returned to full activity, she did not always complain of pain with her reports of breast swelling, and physical examinations revealed no abnormalities. AR 132–33 (citing AR 878–80, 914, 1233–35, 1287–89, 1454–55). Nevertheless, the ALJ included a limitation in the RFC to occasionally reaching overhead with the left upper extremity and frequently reaching in all other directions with the left upper extremity.

Third, as for a heat-related restriction, the Plaintiff complained of heat intolerance at times, AR 1234 (Feb. 2023), 1454 (Nov. 2022), but also denied heat intolerance at times, AR 1185 (Jan. 2023). Notably, she neither listed heat sensitivity as a symptom in her function report, AR 563–70, nor testified about it at the hearing, AR 153–70. As argued by the Defendant, the Plaintiff has not shown that the omission of any related environmental restriction was reversible error or even argued that the identified jobs at step five required an intolerable environment.

The Plaintiff has not shown that the ALJ erred in the RFC determination.

**C.      The Consultative Examiner's Opinion and the Plaintiff's Subjective Complaints**

Finally, the Plaintiff argues that the ALJ erred in weighing the physical consultative examiner's opinion. An ALJ has an obligation to evaluate every medical opinion and explain the persuasiveness of the opinion. *See* 20 C.F.R. § 416.920c(a), (b). Medical opinions are evaluated using the following factors: (1) supportability, which means how well the objective medical evidence and supporting explanations presented by a medical source support the opinion; (2) consistency, which means how consistent the medical opinion is with the evidence from other medical sources and nonmedical sources; (3) relationship with the claimant, which considers the length of a treatment relationship, the frequency of examinations, the purpose of a treatment relationship, the extent of a treatment relationship, and whether there is an examining relationship; (4) specialization of the medical source; and (5) any other factors that tend to support or contradict the medical opinion. *Id.* § 416.920c(c)(1)–(5). The most important factors for evaluating the persuasiveness of a medical opinion are supportability and consistency. *Id*. § 416.920c(a), (b)(2). Therefore, the ALJ must explain how the ALJ considered those two factors in making the disability decision. *Id*. § 416.920c(b)(2). The ALJ may, but need not, explain how the ALJ considered the remaining three factors. *Id.* Importantly, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 362207, at *34478 (July 2, 1996).

As asserted by the Plaintiff, "rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled, as happened here, can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley*, 758 F.3d at 839 (citations omitted). "An ALJ can reject an examining physician's opinion only

13

for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (citation omitted); *see also* 20 C.F.R. § 416.920c(c)(3)(v) ("A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.").

The Plaintiff notes that, in April 2023, the physical consultative examiner opined that the Plaintiff "can sit for 10 minutes and stand for 15 minutes. [The Plaintiff] can walk for 1 block before having to stop [due to] pain." AR 844. The Plaintiff does not address any other aspect of the consultative examiner's opinion.

The ALJ acknowledged all aspects of the consultative examiner's opinion and found this portion unpersuasive as not supported by the findings from the examination. AR 136. The ALJ recognized that, at the examination, the Plaintiff had abnormal heel/toe walking and had a reduced range of motion in her hip, knee, left shoulder, and ankle but also noted that the rest of the examination was unremarkable. *Id.* The ALJ noted that the Plaintiff had a stable gait with only a mild limp on the right; an unremarkable chest examination with no wheezing, crackles, or rhonchi; no gross motor focal deficits; a 5/5 grip strength in her bilateral hands with the ability to perform fine and gross movements on a sustained basis with the ability to button, zip, and pick up coins; normal sensation; 5/5 strength in her upper and lower extremities bilaterally; a normal tandem walk; and a negative straight leg raise. *Id.* The ALJ also noted that the consultative examiner's assessed limitation "due to pain" was without reference to the objective findings in support. *Id.* The ALJ also found that the other evidence of record discussed earlier in the decision showed generally limited clinical and objective findings, showed an ability to care for her mother

14

and engage in various activities, and was not consistent with the degree of limitation noted by the consultative examiner. *Id.*; *see id.* 131–134, 135, 136.

Of the ALJ's extensive discussion of the record evidence, the only specific fault identified by the Plaintiff is the reference to the Plaintiff helping her mother because elsewhere the ALJ recognized that others helped the Plaintiff care for her mother. *See* AR 131. But the ALJ did not err by finding that the Plaintiff's ability to manage chores and care for a relative, which included cooking, vacuuming, doing laundry, and washing dishes, was inconsistent with the opinion that the Plaintiff could only stand for fifteen minutes and sit for ten minutes. AR 136.

Notably, the ALJ found persuasive the state agency reviewing physicians' opinions for light work with postural limitations, providing a detailed discussion of the consistency of the opinions with the record evidence. AR 135; *see* AR 412–13, 420–21. The Plaintiff does not address these opinions or the ALJ's discussion of the evidence. Moreover, as noted earlier, the ALJ assessed greater restrictions than those imposed by the state agency reviewing physicians to accommodate the Plaintiff's left upper extremity difficulties and her fatigue. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (explaining that the RFC finding that was more restrictive than that of the reviewing physicians "illustrat[es] reasoned consideration given to the evidence [the claimant] presented").

Regarding her knees, the Plaintiff contends that the ALJ had earlier referenced the objective evidence related to the Plaintiff's knees, including that "overall" imaging was "generally unremarkable" despite "some abnormal signs." AR 133. The ALJ also noted that the March 2023 CT found "mild tricompartmental osteoarthritis," and that imaging two months later is "otherwise normal" except for "mild to moderate joint space narrowing." *Id.* The Plaintiff reasons that "mild" does not mean "no effect" on functioning but then offers no further evidence

15

to support greater limitations. In contrast, the ALJ cites the medical records during the relevant period showing several unremarkable findings that included a normal gait and a normal ability to move all extremities. *Id.* (citing AR 1235, 1455, 1651, 2259, 2620). The ALJ noted the Plaintiff did not use an assistive device and that the findings were mostly consistent with the April 2023 consultative examination, which the ALJ discussed in detail. *Id.* The ALJ also noted the conservative treatment. *Id.* And, as argued by the Defendant, the state agency reviewing physicians, whom the ALJ found persuasive, considered this imaging and found the Plaintiff able to perform light work. AR 409–10, 413.

The Plaintiff argues that the ALJ cannot rely on her own interpretation of exam findings instead of a doctor's professional judgment. *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016). But here, the ALJ relied on the state agency reviewing physicians and the record when evaluating the consultative examiner's opinion, as required by the regulations. The ALJ's decision for rejecting the consultative examiner's opinion was supported by substantial evidence.

Finally, the Plaintiff argues that the ALJ did not articulate what limitations or symptoms the Plaintiff described that were not credible and why. An ALJ must consider all symptoms and the extent to which those "symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a); SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). "As long as an ALJ gives specific reasons supported by the record," the court will not overturn the ALJ's assessment of the claimant's subjective complaints "unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). Here, the only specific argument is that the ALJ did not properly credit the Plaintiff's fatigue. But, as discussed above, the ALJ evaluated the Plaintiff's reports of fatigue and credited them, providing additional limitations as result. The Plaintiff also argues generally, with no analysis, that the ALJ was not

16

entitled to reject her complaints based on objective evidence alone. The ALJ considered not only

the objective evidence but also the medical opinions of the state agency reviewing physicians,

the Plaintiff's reported activities of daily living, and her largely conservative course of treatment.

*See* SSR 16-3p, 2017 WL 5180304, at *2.

## CONCLUSION

For the above reasons, the Court DENIES the relief sought in the Plaintiff's Brief [ECF

No. 23] and AFFIRMS the decision of the Commissioner of the Social Security Administration.

The Court DIRECTS the Clerk of Court to ENTER FINAL JUDGMENT stating:

Judgment is entered in favor of Defendant Frank Bisignano, Commissioner of the
Social Security Administration, and against Plaintiff Robin R. Pontzius, who shall
take nothing by way of the complaint.

SO ORDERED on March 26, 2026.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

17